The judgments and the order under appeal are reversed.

IN THE MATTER OF THE ESTATE OF ISAAC FERRIS, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1951—Decided December 26, 1951.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Frederick P. Greiner* argued the cause for the appellant (*Messrs. Boyle, Archer & Greiner*, attorneys; *Mr. James A. McTague*, of counsel).

*Mr. Joseph C. Haines* argued the cause for the respondents.

*Mr. George M. Bryson* argued the cause for the cross-appellants.

The opinion of the court was delivered by

BIGELOW, J. A. D. We have before us cross-appeals from a decree of distribution entered by the Camden County Court. Isaac Ferris died leaving a will of which the pertinent provisions read or may be summarized as follows:

By paragraph four he gave $20,000 to his executors in trust for his sister, Katherine, for life. "In the event of the death of my said sister, Katherine M. Ferris, before my own, this legacy shall lapse; and if after my own death, then the said trust fund, and all accrued and unpaid income therefrom, shall revert to and become part of my residuary estate."

Paragraph or item five contains a corresponding legacy of $20,000 for testator's sister, Emma, for life, and on her death, to become part of the residuary estate.

Item fourteen devises and bequeaths the residuary estate to the executors in trust to pay to testator's wife the net income thereof for the term of her natural life and empowers them to pay to her out of *corpus* from time to time such sums as they deem proper for her support. Then comes the testamentary provision that is the center of the controversy.

"(c) On the death of my wife, said Mary S. Ferris, òr if she shall have predeceased me, I direct that my residuary estate, or such part thereof as may remain in the hands of my trustees, shall be divided equally among my brothers and sisters then surviving; provided, always, however, that the share or portion to which my sisters, Katherine M. Ferris and Emma F. Helmbold, would otherwise be entitled, shall not in any event be paid over unto my said sisters, but shall be retained and maintained by my said executors and trustees, as two separate and distinct trust funds for the benefit of my said sisters, and the net income from each of said funds shall be paid unto or for my said sisters, Katherine M. Ferris and Emma F. Helmbold, under the provisions of paragraphs four and five, respectively, in quarterly installments.

The balance of my residuary estate, or such part thereof as may remain in the hands of my trustees, and ultimately as part of my residuary estate, the said trust funds established for the benefit of my said sisters, shall be divided equally among my surviving brothers and sisters, other than the said Katherine M. Ferris and Emma F. Helmbold."

Testator died December 10, 1940, survived by his widow, his brother, Harry, and three sisters, Cora, Emma and Adelaide. His sister, Katherine, had predeceased him. Harry died within a year of testator, and was followed in 1942 by the widow. Cora died next; then Emma, whose share in the estate had been put in trust. Only Adelaide survived her and she too has now passed away.

At the death of the widow, two-thirds of the residuary estate was paid to Cora and Adelaide while the remaining third (now $185,000) was retained by the trustees for the benefit of Emma. Upon her death, the trustees settled their account and sought directions for distribution. The County

Court determined that the fund in question should be paid to Adelaide's personal representative. The representatives of Harry and of Cora have each appealed. The outcome turns on the term "surviving brothers and sisters." The question is, whom must they survive? If testator intended Emma's share to go on her death to those who had survived testator himself, then Harry, Cora and Adelaide would all take. But if he meant those who should survive his wife, then Harry would be excluded. And if testator intended the fund to go exclusively to whoever should outlive Emma, then Adelaide would be the sole remainderman.

The first sentence in item fourteen (c) is a statement of testator's general intention that upon his wife's death, his residuary estate shall be divided among his brothers and sisters "then surviving"; that is, as it turned out, among Emma, Cora and Adelaide. Having stated his general purpose, he particularizes. First he deals with the shares of Emma and Katherine—the latter predeceased testator—and directs that these shares be retained by trustees and only the income paid to Emma and Katherine. Next he turns to the shares of his other brothers and sisters who may survive his wife. "The balance of my residuary estate" is not an apt description of the remainder interest in the portion set aside for Emma and Katherine for life, but it fits well the shares given to Cora and Adelaide. He has here in mind two distributions, one upon the death of his wife and one later, upon the death of Katherine and Emma. Such is the significance of the words "and ultimately." The subject of the first distribution is "the balance of my residuary estate," while the subject of the second is "the said trust funds established for the benefit of my said sisters." The trust funds are not only those created by item fourteen (c) but as well the fund of $20,000 set up for Emma pursuant to item five. The beneficiaries of both distributions are the same persons, a single group, "my surviving brothers and sisters," and evidently this is likewise the same group mentioned in the first sentence of item fourteen (c), those living at the death of his

wife. It is a class that would include Katherine and Emma, were they not expressly excepted:—"other than the said Katherine M. Ferris and Emma F. Helmbold." The group was fixed at the death of the wife and is unaffected by Cora's death in the lifetime of Emma. Testator did not order distribution among his brothers and sisters, surviving the said Katherine and Emma, but instead his surviving brothers and sisters "other than the said Katherine and Emma."

We have no difficulty in determining that testator bequeathed the fund in dispute to Cora and Adelaide and that it should be divided equally between their respective personal representatives. All the parties agree that the accumulated income in the hands of the trustees should be added to the *corpus* and distributed therewith.

So much of the judgment of the County Court as directs the distribution of the estate is reversed, to the end that distribution may be decreed in accordance with this opinion. We will hear counsel with respect to costs on appeal.